(125 P.3d 564)
No. 93,467

# In The Matter of The Estate of Esther R. Broderick, Deceased.

Opinion filed December 16, 2005.

*Susan L. Mauch*, of Cosgrove, Webb & Oman, of Topeka, for appellant Margaret R. Puls.

*Dan K. Wiley* and *John C. Tillotson*, of Murray, Tillotson & Wiley, Chartered, of Leavenworth, for appellee Gene R. Ludwig, special administrator/executor.

Before ELLIOTT, P.J., JOHNSON and BUSER, JJ.

BUSER, J.: Margaret R. Puls, an heir-at-law of the decedent, Esther A. Broderick, appeals the district court's ruling denying her motion for the production of Broderick's medical records and granting the petition for the probate of Broderick's will. We affirm in part, reverse in part, and remand with directions.

### Factual and Procedural Background

In 1993, Esther R. Broderick executed her will. She bequeathed her stocks and bonds to her three nephews, Geary E. Ludwig, Jr.,

Dale W. Ludwig, and Gene R. Ludwig. The residuary of her estate was bequeathed to those same three nephews and two nieces, Esther A. Aikens and Margaret R. Puls. Geary was designated as executor. Dale was the successor executor, and if necessary, then Gene.

Broderick died on June 27, 2004. Prior to her death, Geary had died and Dale became disabled. In July 2004, Gene filed a petition for the admission of Broderick's will to probate and requested that he be named executor of her estate. The petition alleged Broderick was of sound mind and not under any restraint when she executed her will. A hearing was scheduled for August 4, 2004. The heirs were sent a copy of the petition and notice of the hearing.

On August 3, 2004, Puls filed a pro se motion requesting an additional 30 days to file written defenses. Puls opposed the probate of Broderick's will on grounds that Broderick's will was not duly executed, Broderick was mentally incompetent at the time she executed the will, and Broderick was under the undue influence of a beneficiary.

At the hearing, the district court held Puls' pleading constituted a written defense contesting the admission of Broderick's will to probate and continued the hearing to September 20, 2004. The district court also appointed Gene Ludwig as special administrator until the hearing.

On August 13, 2004, Puls filed a pro se motion for the production of Broderick's medical records from Medicalodge. Broderick had resided at Medicalodge, a full-care nursing home, from June 20, 1991, until her death. Puls stated the production of Broderick's medical records from Medicalodge was authorized under 45 C.F.R. § 164.512(e) (2004). She argued the records were necessary "to assess and document" Broderick's mental condition at the time she executed the will. Notice was given to Ludwig but not to Medicalodge.

On August 20, 2004, the district court denied Puls' motion for Broderick's medical records. The court noted a health care entity could disclose the protected information under the federal regulations upon receipt of a court order but concluded that it had no

authority to issue an order requiring Medicalodge to produce Broderick's medical records.

On August 31, 2004, Puls filed a second pro se motion for requesting an order directing Medicalodge to produce Broderick's medical records. Her motion included allegations to explain why she contested Broderick's will. Among the information she sought, Puls requested "any and all mental and physical disorders or aberrations exhibited by [Broderick]." Puls agreed not to use the disclosed medical records for any purpose other than the probate proceedings. As authority for such an order Puls cited 45 C.F.R. § 164.512(e)(1)(i) and several Kansas statutes, including K.S.A. 2004 Supp. 60-234(c).

On September 20, 2004, Puls appeared for the hearing by telephone. Puls informed the district court she had not requested a continuance of the hearing. When the district court concurred, Puls stated she needed additional time for discovery, to prepare the case, and to hire counsel. The district court did not comment on her request and continued with the proceedings.

At Ludwig's request, the district court examined Broderick's will that was filed with his petition and found it met the requirements for a self-proving will. The district court then held the burden shifted to Puls to prove the will should not be admitted for probate.

Puls relied upon the allegations in her second motion for the production of Broderick's medical records. Puls also stated the last time she saw Broderick was in June 1975; however, she had spoken occasionally with staff at Medicalodge to check on Broderick's condition. Puls stated she wanted to question the two persons who witnessed the signing of Broderick's will.

The district court found the fact that Broderick was in a nursing home coupled with the statements Puls made in her motion were insufficient evidence to overcome Broderick's self-proving will. The district court admitted Broderick's will to probate and appointed Ludwig as executor. Puls appeals.

### Medical Records Discovery

Puls contends the district court implicitly denied her second motion to produce Broderick's medical records when it commenced

the hearing. She argues the denial was error because the district court had previously found her earlier pleading was a written defense to the admission of Broderick's will and that Supreme Court Rule 144 (2004 Kan. Ct. R. Annot. 208) authorizes the discovery procedures contained in K.S.A. 60-226 through K.S.A. 60-237, as amended, to apply in probate proceedings involving factual disputes. Puls claims those provisions gave the district court the legal authority to order Medicalodge to produce Broderick's medical records.

Our standard of review is well settled. "Control of discovery is entrusted to the sound discretion of the trial court, and orders concerning discovery will not be disturbed on appeal in the absence of clear abuse of this discretion. [Citations omitted.]" *Hill v. Farm Bur. Mut. Ins. Co.*, 263 Kan. 703, 704, 952 P.2d 1286 (1998). "Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court. [Citation omitted.]" 263 Kan. at 704.

### Kansas Discovery Procedures

In 1977, the unification of the Kansas court system abolished the probate courts and placed all probate matters brought pursuant to Chapter 59 under the authority of the district court. *Quinlan v. Leech*, 5 Kan. App. 2d 706, 709, 623 P.2d 1365 (1981). Civil proceedings in the district court, except for limited actions commenced under Chapter 61, are governed by the Code for Civil Procedure in Chapter 60. K.S.A. 2004 Supp. 60-201. Also in 1977, the Kansas Supreme Court adopted Supreme Court Rule 144 (2004 Kan. Ct. R. Annot. 208), which now provides:

"In all proceedings now or hereafter conducted pursuant to Kansas Statutes Annotated, Chapter 59, the discovery procedures as now prescribed by K.S.A. 60-226 to K.S.A. 60-237, inclusive, or as hereafter amended, together with all rules of court pertaining thereto, shall be available to the parties in such proceedings if issues of fact have been raised by written defenses."

K.S.A. 2004 Supp. 60-226(a) authorizes the parties in a proceeding to use depositions by oral examination or written questions, written interrogatories, production of records and items, per-

mission to enter upon property for inspection, physical and mental examinations, and requests for admission.

A party is authorized under K.S.A. 2004 Supp. 60-230(a) and K.S.A. 2004 Supp. 60-231(a) to take the testimony "of any person" by oral or written depositions. A nonparty "may be compelled to produce documents and things or to submit to an inspection as provided in K.S.A. 60-245 and 60-245a and amendments thereto." K.S.A. 2004 Supp. 60-234(c).

K.S.A. 2004 Supp. 60-245a authorizes the issuance of a subpoena duces tecum for the records of a nonparty business. It provides in part as follows:

"A subpoena duces tecum which commands the production of business records in an action in which the business is not a party shall inform the person to whom it is directed that the person may serve upon the attorney designated in the subpoena written objection to production of any or all of the business records designated in the subpoena within 14 days after the service of the subpoena or at or before the time for compliance, if the time is less than 14 days after service. If such objection is made, the business records need not be produced except pursuant to an order of the court upon motion with notice to the person to whom the subpoena was directed." K.S.A. 2004 Supp. 60-245a(b).

The statute also states that a "party may require the personal attendance of a custodian of business records and the production of original business records by causing a subpoena duces tecum to be issued." K.S.A. 2004 Supp. 60-245a(d). If the attendance of the custodian is not required, notice must be given to all of the other parties to the action of the party's intent to request the issuance of a subpoena at least 10 days before its issuance and a copy of the proposed subpoena must also be served upon all parties. If a party objects to the issuance of the subpoena, the subpoena cannot be issued until further order of the court. K.S.A. 2004 Supp. 60-245a(e).

Puls states the district court "could have ordered the Medicalodge records custodian to stand for a deposition and produce the health information records in question." She also points out there were no objections to her motion.

Puls' motions did not comply with Kansas civil procedure. Her motions did not request Medicalodge's custodian of records to tes-

tify at a deposition, nor were they a request for a subpoena duces tecum that commanded the production of the information and notified both Medicalodge and Ludwig of their opportunity to object within 14 days.

Puls also argues her pro se motions were sufficient for the district court to issue an order directing Medicalodge to produce Broderick's medical records since pro se motions are to be liberally construed. She asserts pro se litigants should not be held to the same level as a lawyer on the "finer points" of civil procedure or, in the alternative, the district court should have directed her to K.S.A. 2004 Supp. 60-234(c) and K.S.A. 2004 Supp. 60-245a.

While pro se pleadings are to be liberally construed so that relief may be granted if warranted by the facts alleged, this simply means that the substance of the pleading controls over its label. See *Jackson v. State*, 1 Kan. App. 2d 744, Syl. ¶ 3, 573 P.2d 637 (1977), *rev. denied* 225 Kan. 844 (1978). The relief requested by Puls was clearly seeking an order directing Medicalodge to produce Broderick's medical records. The liberal construction rule, however, does not mean that the statutory requirements to obtain those records may be ignored. Our court has stated the following rule applicable to pro se litigants:

"A pro se litigant in a civil case is required to follow the same rules of procedure and evidence which are binding upon a litigant who is represented by counsel. Our legal system cannot function on any basis other than equal treatment of all litigants. To have different rules for different classes of litigants is untenable. A party in civil litigation cannot expect the trial judge or an attorney for the other party to advise him or her of the law or court rules, or to see that his or her case is properly presented to the court. A pro se litigant in a civil case cannot be given either an advantage or a disadvantage solely because of proceeding pro se." *Mangiaracina v. Gutierrez*, 11 Kan. App. 2d 594, 595-96, 730 P.2d 1109 (1986).

Because Medicalodge was not a party to the probate case, the proper method to obtain Broderick's medical records from Medicalodge was to follow the requirements of K.S.A. 2004 Supp. 60-245a for a subpoena duces tecum to a nonparty. Even if Puls' motions were liberally construed, she did not comply with the notice requirements to Medicalodge and the district court did not err by failing to advise Puls of the appropriate discovery statutes.

*Health Insurance Portability and Accountability Act Regulations*

Puls next argues the federal regulations that were enacted pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. § 1320d *et seq.* (2000), authorized the district court to issue an order directing Medicalodge to produce Broderick's medical records.

At the outset, it is important to note that the federal regulations pursuant to HIPPA do not create a federal privilege between physician-patient or hospital-patient; rather, the regulations provide the required procedures for disclosure. Any objections to disclosure claiming such a privilege would be based upon authority other than the federal regulations. *Northwestern Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 925-26 (7th Cir. 2004).

Ludwig does not deny that Medicalodge is a covered entity under HIPAA. See 45 C.F.R. §160.103 (2004) (a covered entity includes a [1] health plan, [2] health care clearinghouse, and [3] health care provider transmitting health information in electronic form in connection with a covered transaction). An individual is defined as "the person who is the subject of protected health information." 45 C.F.R. § 160.103.

The federal regulations also apply "to the protected health information of a deceased individual." 45 C.F.R. § 164.502(f) (2004). In cases of a deceased individual, the covered entity must "treat a personal representative as the individual." 45 C.F.R. § 164.502(g)(1). A personal representative of the deceased individual includes an executor or administrator who under applicable law is authorized to act on behalf of a deceased individual's estate. 45 C.F.R. § 164.502(g)(4).

HIPAA regulations preempt any contrary provision of state law unless the state law provides greater privacy protection for an individual whose health information is protected. See 45 C.F.R. § 160.203(b) (2004). Under the regulations, "[a] covered entity may not use or disclose protected health information, except as permitted or required by [the regulations]." 45 C.F.R. § 164.502(a) (2004).

A covered entity, however, may disclose protected health information as permitted by and in compliance with 45 C.F.R. § 512(e)

or 45 C.F.R. § 164.514(e) (2004). 45 C.F.R. § 164.502(a)(vi). When disclosing protected health information, "a covered entity must make reasonable efforts to limit protected health information to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request." 45 C.F.R. § 164.502(b). 45 C.F.R. § 162.512(e) authorizes four methods to obtain the protected health information.

The first method requires the party seeking the information through a subpoena, discovery request, or other lawful process that is not accompanied by a court order to provide a statement and attach documentation to the covered entity that the party made reasonable efforts (or a good faith attempt to do so) to notify the individual whose health information is protected. 45 C.F.R. § 164.512(e)(1)(ii)(A), (iii)(A). The party must also provide a statement and documentation showing that the notice included information about the litigation so that the individual could object in court, that the time to file such objections had elapsed, and that either no objections were filed or they were resolved by the court and the disclosures were consistent with that resolution. 45 C.F.R. § 164.512(e)(1)(ii)(A), (iii)(B)-(C).

The second method allows a covered entity to release the protected information in response to a subpoena, discovery request, or other lawful process without a court order if the party seeking the protected information gives satisfactory assurance to the covered entity that reasonable efforts were made to secure a qualified protective order. 45 C.F.R. § 164.512(e)(1)(ii)(B). Such satisfactory assurances include a written statement with accompanying documentation that the parties to the dispute have agreed to a qualified protective order and have presented it to the court or the party seeking the information has requested a qualified protected order from the court. 45 C.F.R. § 164.512(e)(1)(iv).

A qualified protected order is defined as a court order or a stipulation by the parties to the litigation that the parties are prohibited from using or disclosing the information for any purpose other than the litigation for which it was requested and the information must be returned to the covered entity or destroyed at the conclusion of the litigation. 45 C.F.R. § 164.512(e)(1)(v).

The third method authorizes a covered entity to release the protected information in response to a lawful process without the required assurances from the requesting party if the covered entity makes reasonable efforts to provide notice to the individual that meets the requirements of the first method or seeks a qualified protected order that meets the requirements of the second method. 45 C.F.R. § 164.512(e)(1)(vi).

Puls' motion did not comply with any of the above HIPAA regulations because it was not sent to Medicalodge and did not include all of the required assurances.

The fourth method to obtain the protected information states as follows:

"A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:

(i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order." 45 C.F.R. § 164.512(e)(1).

Puls argues this option authorized the district court to issue an order to Medicalodge for the production of Broderick's medical records. Puls states: "Since Kansas law does not provide more stringent protection for a decedent's health information records, HIPAA requirements control."

According to Puls' argument, the court may issue an order requiring a nonparty to produce any and all medical documents without giving notice to the nonparty who holds the individual's medical records. This argument is inconsistent with HIPAA regulations which create the minimum requirements for disclosure and provide that state laws must be followed if they afford additional protection.

As discussed above, K.S.A. 2004 Supp. 60-245a(b) requires a nonparty be served with a subpoena duces tecum and told a written objection to the production of the documents can be made within a specified time period. If so, the documents need not be produced unless the party files a motion with notice to the nonparty and thereafter the court issues an order for the nonparty to produce the documents. At a minimum, Kansas law or HIPAA regulations required Puls to notify Medicalodge of her request for the pro-

duction of Broderick's medical records and afford Medicalodge the opportunity to object. In this context, the district court did not err by denying Puls' motion.

One other option existed for Puls to obtain Broderick's protected medical information from Medicalodge that is not provided for under 45 C.F.R. § 164.512(e). The federal regulations authorize a covered entity to disclose protected health information pursuant to a valid authorization under 45 C.F.R. § 164.508. 45 C.F.R. § 164.502(a)(iv). If a covered entity receives a valid authorization, its disclosure must be consistent with that authorization. 45 C.F.R. § 164.508(a)(1). The requirements for a valid authorization are set forth in 45 C.F.R. § 164.508(c).

Puls claims it would be unreasonable to expect that Broderick's personal representative would execute the authorizations because the personal representative was also the beneficiary who was accused of wrongdoing.

In Kansas, a patient's medical records, whether for a physical or mental condition, are protected by the physician-patient privilege. See K.S.A. 60-427. The holder of the privilege includes "the personal representative of a deceased patient." K.S.A. 60-427(a)(3). Even though not the holder of the privilege, a physician or hospital, absent statutory authority, may not reveal information subject to the privilege without the knowledge and consent of the patient or the holder of the privilege. As such, hospital records that are subject to the physician-patient privilege are not usually discoverable without notice to and consent of the holder of the privilege. *Wesley Medical Center v. Clark*, 234 Kan. 13, 20, 669 P.2d 209 (1983).

There is no physician-patient privilege, however, regarding "an issue as to the validity of a document as a will of the patient" or "an issue between parties claiming by testate or intestate succession from a deceased patient." K.S.A. 60-427(c)(2)-(3). Puls could have submitted HIPPA-complaint authorizations to Ludwig for his signature. If Ludwig refused to sign the authorizations, the district court could have then determined whether it should order Ludwig to sign the authorizations.

Quite simply, Puls did not comply with the necessary requirements under state law or HIPAA regulations to properly obtain

Broderick's medical records held by Medicalodge. Under these circumstances, the district court's denial of Puls' motions to produce medical records was not a clear abuse of discretion and we affirm.

### Admission of Will to Probate

Puls contends the district court erred by admitting Broderick's will to probate. She claims Ludwig did not present a prima facie case to prove capacity and due execution.

At the hearing, Ludwig's counsel asked the district court to take notice of the will itself which was filed with the petition. He argued Broderick's will established a prima facie case to prove capacity and due execution because it met all of the statutory requirements of a self-proving will. The district court reviewed the will and agreed. Ludwig's counsel then rested his case.

Puls, who appeared by telephone, asked if the attesting witnesses were at the hearing. The district court advised they were not and that Kansas law authorized a self-proving will to be admitted into evidence without the testimony of attesting witnesses. Upon its admission, no further evidence was needed to prove capacity or the lack of undue influence. Puls said she wanted the opportunity to examine witnesses and had prepared a list of questions for them. The district court, however, had Puls present her evidence and arguments to contest Broderick's will.

In cases where the district court has made factual findings and conclusions of law, our function is to decide whether its findings are supported by substantial competent evidence and whether those findings are sufficient to support the district court's legal conclusions. *In re Estate of Farr*, 274 Kan. 51, 58, 49 P.3d 415 (2002).

When the admission of a will is contested, the burden of proof has been stated as follows:

"When offering a will to probate, the burden of proof is initially upon the proponent to make a prima facie case showing capacity and due execution of the will. [Citations omitted.] It is well established in Kansas that once it has been shown that a will has been executed in accordance with the formalities required by law, the burden is upon the will contestant and he or she must produce evidence to support his or her position. [Citation omitted]." 274 Kan. at 58-59.

The provisions in Broderick's will clearly met the statutory requirements of a self-proving will. See K.S.A. 2004 Supp. 59-606. Puls does not challenge that portion of the district court's decision. Rather, she contends a self-proven will cannot be used as prima facie evidence to prove the testator's capacity and the due execution of the will in cases where the will is contested.

K.S.A. 2004 Supp. 59-2224 states that at the hearing on the petition for the probate of a will:

"[U]nless it is an uncontested, self-proved will . . . the testimony of at least two of the subscribing witnesses shall be taken in person, by affidavit or by deposition. The court may waive the requirement of such testimony of such subscribing witnesses upon a proper showing that such witnesses are unavailable or cannot be located. Otherwise, the court may admit the testimony of other witnesses to prove the capacity of the testator . . . and the due execution of the will . . . and, as evidence of such execution, may admit proof of the handwriting of the testator . . . and of the subscribing witnesses."

Similarly, K.S.A. 2004 Supp. 59-606 provides that "[a] self-proved will, unless contested, shall be admitted to probate without the testimony of any subscribing witness, but otherwise it shall be treated no differently than a will not self-proved. A self-proved will may be contested in the same fashion as a will not self-proved."

Puls also relies upon the following language from *In re Estate of Farr*:

"[I]t is important to note that pursuant to K.S.A. 2001 Supp. 59-606, if a will containing a self-proving affidavit is contested, the will is treated as if it contained no such affidavit. Thus, once a self-proved will is contested, the question of the validity of the self-proving affidavit is moot because the affidavit is no longer conclusive as to the admission of the will to probate." 274 Kan. at 59-60.

In his brief, Ludwig's counsel candidly "admits that, if the will was properly contested, the [district court] applied the wrong standard and a *prima facie* case was required to be made by the proponents of the will. However, the question is whether [Puls] set forth sufficient allegations to contest the will." Ludwig's counsel continues by arguing Puls presented only conclusory allegations and hearsay statements that were insufficient to raise the issues of undue influence and capacity.

There is no statute prescribing the requirements for a written defense in probate proceedings. Supreme Court Rule 143 (2004 Kan. Ct. R. Annot. 208) addresses procedural matters when a written defense to a petition is filed in a probate case, but it does not indicate the form or substantive content for a valid written defense.

Significantly, at the August 3, 2004, hearing, the district court asked Ludwig's counsel for his position on Puls' motion for a continuance and he responded, "Well, Judge, I think she has actually, even though she hasn't captioned it as written defenses, she's filed a pleading in here which I think *constitutes a written defense setting up an attack on the validity of the will.*" (Emphasis added.) The district court concurred. Ludwig's counsel continued, "[Puls] did file the responsive pleading within the time permitted by notice, even though it was late in the day yesterday." He then advised the district court that the hearing should be continued so that Puls could present her defense to the admission of the will.

"Where a party procures a court to proceed in a particular way thereby inviting a particular ruling, that party is precluded from assailing such proceeding and ruling on appellate review. [Citation omitted.]" *McGuire v. Sifers*, 235 Kan. 368, 372, 681 P.2d 1025 (1984).

Because the district court determined that Puls filed a written defense to the admission of Broderick's will, Ludwig had the burden of proof to make a prima facie case showing capacity and due execution of that will. Ludwig did not sustain his burden of proof by presenting Broderick's self-proven will. The district court erred by concluding that he did. We hold there was insufficient evidence for the district court's factual findings and conclusions of law that the will be admitted to probate.

Affirmed in part, reversed in part, and remanded with directions to the district court to allow the parties to proceed with the will contest following a reasonable period of time for discovery.