NOT DESIGNATED FOR PUBLICATION

No. 126,878

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMEA KLINE,
*Appellee*,

v.

DENNIS BERGSTROM,
*Appellant*.

MEMORANDUM OPINION

Appeal from Dickinson District Court; RYAN W. ROSAUER, judge. Submitted without oral argument. Opinion filed October 25, 2024. Affirmed.

*Dennis Dale Bergstrom Jr.*, appellant pro se.

*Richard H. Seaton, Sr.*, of Seaton Law Offices, LLP, of Manhattan, for appellee.

Before MALONE, P.J., GREEN and SCHROEDER, JJ.

PER CURIAM:  Dennis Bergstrom, who has acted pro se throughout the entirety of this litigation, appeals the district court's order finding him civilly liable for assaulting and battering his neighbor, Jamea Kline, and awarding her $1,000 in noneconomic damages. On appeal, Bergstrom raises many arguments why the district court erred by finding him civilly liable for assault and battery as well as why the district court erred by denying his six counterclaims against Kline. Yet, there are many reasons why Bergstrom's arguments are fatally flawed.

1

Our Supreme Court and this court have repeatedly warned pro se litigants that they are required to follow the same rules of procedure and evidence that govern litigants who are represented by counsel. *Guillory v. State*, 285 Kan. 223, 229, 170 P.3d 403 (2007) (holding that pro se civil litigants are "required to be aware of and follow the rules of procedure that apply to all civil litigants, pro se or represented by counsel"); see also *Joritz v. University of Kansas*, 61 Kan. App. 2d 482, 498, 505 P.3d 775 (2022); *In re Estate of Broderick*, 34 Kan. App. 2d 695, 701, 125 P.3d 564 (2005); and *Mangiaracina v. Gutierrez*, 11 Kan. App. 2d 594, 595-96, 730 P.2d 1109 (1986). Here, Bergstrom has not designated a record on appeal sufficient to support his arguments. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013), and Kansas Supreme Court Rule 6.02(a)(4) (2024 Kan. S. Ct. R. at 36). Also, Bergstrom's arguments largely hinge on his erroneous interpretations of the law, which mitigate or condone his intentional tortious conduct against Kline. As a result, we firmly reject Bergstrom's arguments while affirming the district court.

FACTS

Kline's mother and father lived in the same house in Herington, Kansas, for about 50 years. During the last 10 or so years of her parents' lives, Kline frequently traveled from her home in the Kansas City area to her childhood home in Herington to help her aging parents. Kline's father died sometime in 2019. Then, Kline's mother died sometime in 2020.

After Kline inherited her parents' longtime house when her mother died, Kline immediately decided to sell it. As a result, Kline started cleaning and preparing the house for sale. After Bergstrom learned that the house was for sale, he made an offer to buy the house through a realtor. Kline declined Bergstrom's offer. She did not want to sell the house to Bergstrom because she worried that Bergstrom would not "keep the house historical."

2

Bergstrom's house, which he bought in 2012, and Kline's house were on adjacent lots. The northern border of Kline's lot shared a property line with the southern border of Bergstrom's lot. Kline's father built a split-rail fence along what he believed to be the northern border of his lot decades ago. Kline's father also had a garden and a shed within several feet of the split-rail fence. Kline believed that the spilt-rail fence marked the property line between the two lots. She suggested that her father built the fence based on markers from a prior land survey.

It seems that Kline and Bergstrom had negative interactions with each other before Kline inherited the house. Regardless, it is undisputed that after Kline inherited the house, Bergstrom started complaining that the split-rail fence was located inside his lot. Put another way, Bergstrom believed that his property line on the southern border of his lot was further south than the split-rail fence.

Ultimately, on April 4, 2021, Kline's and Bergstrom's disagreement about the property line's location turned violent. That day, Kline's and Bergstrom's other neighbors—Fred and Dory Olsen—ran over to the disputed property line after they heard Kline and Bergstrom screaming at each other. Eventually, Dory called Herington police. Herington police arrested Bergstrom. Then, following a bench trial in November 2021, the Herington Municipal Court found Bergstrom guilty of battering Kline during the April 4, 2021 confrontation.

As Bergstrom's municipal court case proceeded, Kline obtained a protection from stalking (PFS) order against Bergstrom. Although Bergstrom appealed the district court's decision granting Kline a PFS order to this court, this court affirmed the district court's decision in *J.D.K. v. D.D.B.*, No. 125,118, 2023 WL 176832, at *3, 7 (Kan. App. 2023) (unpublished opinion). Then, about a couple of weeks after the Herington Municipal Court found Bergstrom guilty of battering her, Kline filed a petition with the Dickinson County District Court in which she pleaded two causes of action—civil assault and

3

battery as well as trespass. In her amended petition, although Kline had not pled intentional infliction of emotional distress as a cause of action against Bergstrom, Kline asked that the district court award her damages "in excess of $75,000 for personal injury by assault and battery, for trespass, and for intentional infliction of emotional distress."

In his pro se answer to Kline's petition, Bergstrom "denie[d] all allegations and causes [of] action." He also pled six counterclaims against Kline, which broadly alleged that Kline was civilly liable for the following: (1) for being a nuisance to him in his public and private life; (2) for trespassing on his property multiple times; (3) for battering him on April 4, 2021; (4) for harassing him to the point he was falsely imprisoned and subjected to malicious prosecution; (5) for "cuss[ing] and yell[ing] at [him,] calling him names" for no reason; and (6) for defaming him by telling coworkers that he was "a drunk, registered sex offender, methamphetamine manufacturer and user, and kill[ed] dogs."

During the ensuing litigation, Bergstrom filed many pro se motions. This included moving for immunity from Kline's claims under K.S.A. 21-5231(a) because any offensive contact between him and Kline occurred while he was defending himself and his property. In this pro se motion, Bergstrom asserted that K.S.A. 21-5226(c) barred Kline from arguing immunity to his battery counterclaim because Kline purposefully provoked him during the April 4, 2021 confrontation. Bergstrom asserted that Kline was the initial aggressor because she intended to anger him. He also asserted that he acted in self-defense because Kline "hit him in the face" before he touched her.

At this point, it is important for us to discuss Bergstrom's unique strategic decisions about what information to include in the record on appeal in this case. In his pro se motion asserting that he was immune from Kline's civil battery and trespass claims, Bergstrom provided his perspective on the property dispute. This included a detailed description of what he believed happened during the April 4, 2021 confrontation

4

with Kline. Bergstrom also testified about the property dispute at the evidentiary hearing on his immunity motion on September 7, 2022, and at the eventual bench trial on the parties' competing claims on November 29, 2022. In fact, the district court's memorandum decision, denying Bergstrom's immunity motion because a reasonable person could believe that he was the initial aggressor and that he used excessive force, relied heavily on Bergstrom's evidentiary hearing testimony.

Bergstrom has included his pro se immunity motion in the record on appeal. Because Bergstrom has included this motion in the record, we know Bergstrom's explanation of why he and Kline disagreed about the location of their shared property line. Nevertheless, Bergstrom's requests for transcripts to be included in this court's record on appeal reveals that he *intentionally* excluded significant parts of the transcripts from the evidentiary hearing on his immunity motion and the parties' eventual bench trial from the record on appeal.

After Bergstrom filed his notice of appeal, he filed three requests for transcripts for inclusion in the record on appeal with the Dickinson County District Court. He hand-signed and served each request on Kline's attorney. In his first request filed on March 6, 2023, Bergstrom asked that the transcriptionist transcribe the entire evidentiary hearing on his immunity motion and the entire bench trial. In his second request filed on June 8, 2023, Bergstrom asked that the transcriptionist transcribe the entire evidentiary hearing on his immunity motion. This request did not include preparing a transcript of the bench trial. In his third and final request filed on September 22, 2023, Bergstrom asked that the transcriptionist transcribe just portions of his evidentiary hearing on his immunity motion and the bench trial.

For his evidentiary hearing on his immunity motion, he wanted a transcript "excluding all testimony except JAMEA DANU' KLINE." For the bench trial, he wanted a transcript "excluding all testimony except JAMEA DANU' KLINE and DEBRA

JONES." As a result, Bergstrom's decision limits what information has been included in the record on appeal, and thus, what information this court can review to understand the factual background in this case.

Notwithstanding this inherent problem, a review of the record reveals that in Bergstrom's pro se immunity motion, Bergstrom alleged that sometime before Kline's mother's death, Kline "us[ed] her friend, who was the City Code Inspector," to suspend his "fence permit until he commissioned a legal survey." He admitted that he "waited to have a legal survey done of his property [until] after [Kline's mother] passed away and ownership of her property went to [Kline]." He asserted that the legal survey proved that the southern border of his lot "was an additional 15-20 feet" past the split-rail fence. He explained that "[u]pon discovering this, [he] began . . . tear[ing] down all of the previous fencing and removing any lawn ornamentation of [Kline's] that was on his property." He also explained that after dismantling the split-rail fence, he ran a "string from each of the corner stakes placed by [the land survey company]" to mark what he believed to be the correct property line.

As for his April 4, 2021 confrontation with Kline, in his pro se immunity motion, Bergstrom complained about Kline "piling garbage, lumber, and general landscaping objects along the location of where the fence used to be . . . frustrating [him]." He asserted that once Kline left the house, he would "remove the objects" that he considered to be on his property. According to Bergstrom, this annoyance caused the confrontation on April 4, 2021, which he summarized as follows:

> "While in the back yard [I] saw that [Kline] had piled wooden boards and retaining wall blocks where the fence used to stand.
>      "[I] began tossing the materials onto [Kline's] property cussing loudly at how frustrated [I] was at having to remove her trash every time she went to the property. While doing this[, I] did not realize that [Kline] had been standing by her truck watching [me] until she started yelling and cussing at [me as I] was walking away.

6

"An argument about the property line erupted with both parties cussing and yelling at each other for approximately 5-10 minutes. [I], realizing how ridiculous [we] looked, ordered [Kline] not to enter [my] property again before turning around and walking away.

"Instead of agreeing to terminate the confrontation and walk away as well, [Kline] started a new recording on her phone while chasing after [me] yelling at [me].

"When [I] heard [Kline, I] looked back to see that she had started following [me] onto [my] property and turned around to order her to leave, walking towards her to chase her off of [my] property. As [I] got closer, [Kline] backed up approximately three steps and [I] reached out [my] arm to point and yell at her. When she stopped moving backwards [I] was close enough, [Kline] lunged at [me,] with her shoulder accidently hitting [me] in the mouth and nose with her phone.

"[I] instantly reacted to this, pushing [Kline's] arms up and away from [my] face[,] causing her to go backwards and fall."

At the parties' bench trial, Kline described what happened during the April 4, 2021 confrontation differently. It is unclear when Kline learned that Bergstrom dismantled her "dad's fence" next to her father's shed. But she testified that at some point, she discovered that Bergstrom destroyed her father's split-rail fence and "threw it in a junk pile for him to burn." Based on the split-rail fence's previous location, Kline testified that the junk pile was on Bergstrom's lot. She alleged that on April 4, 2021, as she was getting ready to leave the house, she "heard screaming and throwing and banging and cussing" from the area of the disputed property line nearby her father's shed. She alleged that after moving towards the noise, she saw Bergstrom "had taken all of this stuff and [thrown] it against [her] dad's shed." She explained that she started filming Bergstrom with her cell phone's camera because she "didn't feel safe."

Then, Kline testified, "I walked up there, and I pretty much didn't use the right language, but asked him, 'What are you doing?' And then he just started just going to town about that [*sic*] I was on his property and stuff, when I was not." When asked by her attorney if she ever "hit or attack" Bergstrom, Kline responded, "No. He charged me back

into my dad's garden and picked me up and body slammed me, because I had bruises on both of my arms and on my back." She testified that she hit her head as Bergstrom "[p]icked [her] up and threw [her] on the ground." She indicated that Bergstrom remained on top of her until Fred Olsen told him to get off of her as Dory Olsen called the police.

During Kline's testimony, Kline successfully admitted photos of bruising on her body, which she alleged Bergstrom caused. Although the video has not been included in the record on appeal, Kline successfully admitted the video from her cellphone of Bergstrom charging at her into evidence. The district court's discussion of the video in its order denying Bergstrom's immunity motion stated that Kline fell after a "highly agitated" Bergstrom pushed her. It also explained that after Kline fell, "[Bergstrom] stood over [Kline] for a second or two with his finger pointed at her, and then he turned his back to her and walked away."

In addition to Kline's own testimony, Debra Jones also testified on Kline's behalf. Jones was Kline's friend who helped her care for her aging parents and prepare the house for sale. She explained that when she was at the house, she saw Bergstrom have angry outbursts. She testified that Bergstrom "would start throwing and—and cussing . . . and he would be out in the front yard by himself." She testified that "on one particular occasion," he was having an angry outburst while "there was nobody around." She described Bergstrom's behavior as "scary." Jones testified given such behavior, she "kept far away from the property line." She testified that she encouraged Kline to stay far away from the disputed property line even when she was mowing the lot because she "fear[ed] for [Kline's] well-being." Also, like Kline, she testified that Bergstrom was using strings to mark where he thought the property line was located and that those strings were constantly moving further south into Kline's lot.

As already discussed, Bergstrom requested that the bench trial transcript "excluding all testimony except JAMEA DANU' KLINE and DEBRA JONES" be

8

transcribed and included in this record on appeal. At the bench trial, however, Bergstrom called three witnesses—Kline, himself, and a woman named Elizabeth Bennett. So, the transcriptionist has included Bergstrom's direct examination of Kline in the bench trial transcript. Yet, when Bergstrom and Bennett testified, the transcriptionist included a note stating that Bergstrom requested that their testimony not be transcribed. Still, in a posttrial filing, Bergstrom stated that Bennett was a coworker who testified that Kline had told her that he "was a drunk and a pedophile." Also, during his closing argument, Bergstrom summarized why he believed that he and Kline had the April 4, 2021 confrontation. He stated that the confrontation resulted after Kline's "refusal to accept [his] right to property[, and] to try and dictate what [he could] and [could not] do." He stated that Kline was a liar "who want[ed] to control somebody else" and "act[ed] outside [the] reasonable norm."

At the end of evidence, the district court told the parties that it would rule on their claims after they filed their proposed findings of fact and conclusions of law. Eventually, the district court entered a detailed memorandum decision that made rulings in favor and against both parties. In doing so, the district court explained "what it [was] doing with [its] findings and what it [was] not doing." It told the parties that it would only make findings and rulings on "what each party claimed," rather than "critiquing what they should have claimed (if anything)." While addressing Bergstrom's first counterclaim— that Kline was a nuisance—the district court also told Bergstrom that it would liberally interpret his pleadings because he was acting pro se. See *Joritz*, 61 Kan. App. 2d at 498 (explaining that courts liberally construe pro se pleadings based on their substance instead of their label).

Regarding both Kline's and Bergstrom's competing trespass claims, the district court found that Bergstrom "started laying out a string that showed what he believed to be the property line" after obtaining a legal survey of his property. It found that both Kline and Bergstrom believed that each other had trespassed on each other's lot. It found that

9

there was conflicting evidence about where the property line existed. Then, it found that whether either Kline or Bergstrom trespassed onto each other's lots was merely an "academic" issue. It ruled that even if Kline and Bergstrom trespassed onto each other's lots, it was irrelevant because neither proved that they suffered damages from the alleged trespasses.

For its remaining fact-findings involving Kline's claims against Bergstrom, the district court found that Kline's "refusal to sell to [Bergstrom] seems to have been the impetus for the dispute." It found Bergstrom "admitted he [had] anxiety issues, and those issues [would] sometimes manifest themselves in angry (and public) outbursts." As for the April 4, 2021 confrontation, it found that even if Kline was trespassing, "[t]here was no reason [for Bergstrom] to approach [Kline] in the aggressive manner he did and then push her." The district court found that although Kline suffered from other "psychological issues," Kline "certainly suffered stress and fear" from the confrontation. The district court also found that Kline suffered physical pain from Bergstrom's "push" and her resulting fall.

So, the district court found Bergstrom civilly liable to Kline for assault and battery. It determined that it could award Kline damages for the physical pain she suffered from Bergstrom's battery. It also expressly stated that the court could "only award [Kline] damages for any psychological issues stemming directly from the assault consummated by a battery" because of the limited evidence she presented. Afterwards, although Kline requested damages in excess of $75,000, the district court determined that Kline proved that she suffered just $1,000 in noneconomic damages for pain, suffering, and mental anguish. In awarding damages, the district court stressed that Kline never pleaded intentional infliction of emotional distress, and thus, it would not "rule on this matter."

Regarding Bergstrom's counterclaims, the district court seemingly rejected Bergstrom's requested fact-findings based on the documents included in the record on appeal. It found that Bergstrom, not Kline, was the person that acted unreasonably during the April 4, 2021 confrontation. It found that even if "[Kline] 'slapped' [Bergstrom], it was incidental contact because of the aggressive and very angry approach [Bergstrom] made toward her." It found that Kline's PFS order against Bergstrom and that his municipal battery conviction proved that Herington's prosecution against him was not "malicious" and that the time he spent in jail was not false imprisonment. For Bergstrom's defamation counterclaim, the district court did find Bennett's testimony credible. It explained that it believed Bennett's testimony about Kline telling her that Bergstrom abused alcohol, used methamphetamine, and was a pedophile. Because it found that there was no evidence that Kline's conversation with Bennett "ever led to public hatred, contempt or ridicule," though, it concluded that Bergstrom suffered no damages. As a result, the district court denied all six of Bergstrom's counterclaims against Kline.

Bergstrom timely appealed the district court's memorandum decision.

ANALYSIS

*Did the district court err when it found Bergstrom civilly liable for assault and battery or when it rejected Bergstrom's counterclaims?*

Assault is defined as "'an intentional threat or attempt, coupled with apparent ability, to do bodily harm to another, resulting in immediate apprehension of bodily harm. No bodily contact is necessary.'" *Baska v. Scherzer*, 283 Kan. 750, 756, 156 P.3d 617 (2007). "Battery is defined as 'the unprivileged touching or striking of one person by another, done with the intent of bringing about either a contact or an apprehension of contact, that is harmful or offensive.'" 283 Kan. at 756. When considering a claim of civil battery, the defendant's intention to inflict injury on the plaintiff is key. 283 Kan. at 756. In contrast, for trespasses, the defendant does not have to intend to enter another's land

11

without authority. Rather, to trespass, a defendant need only an "'intention to enter upon the particular piece of land in question, irrespective of whether the actor knows or should know that he is not entitled to enter.'" *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 22, 378 P.3d 1090 (2016).

When we review a district court's decision for sufficiency of the evidence, we consider whether the evidence supports the district court's decision when viewed in the light most favorable to the prevailing party. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 407, 266 P.3d 516 (2011). If the evidence supports the district court's decision under this standard, we will affirm the district court's decision. 293 Kan. at 407. Also, while engaging in this review, we defer to the district court's fact-findings. "'[I]t is not the function of the appellate court to weigh the evidence or pass on the credibility of witnesses.'" 293 Kan. at 407. On the other hand, because statutory interpretation challenges are questions of law, we exercise unlimited review when considering arguments about the district court's construction of a statute. *Montgomery v. Saleh*, 311 Kan. 649, 654, 466 P.3d 902 (2020). "The most fundamental rule of statutory construction is that the Legislature's intent governs if that intent can be ascertained. [Citation omitted.]" 311 Kan. at 654.

On appeal, Bergstrom's arguments are often repetitive and confusing. Although he divides his brief into five separate issues, Bergstrom raises multiple arguments within the five arguments he has expressly labeled as the issues before this court. Regardless, Bergstrom's arguments involve two overarching issues: (1) the sufficiency of the evidence supporting the district court's memorandum decision, and (2) the district court's interpretation and application of criminal statutes explaining when a person is immune from prosecution because he or she was acting in defense of property.

Kline responds that we should affirm the district court's decision finding Bergstrom civilly liable for assault and battery. She argues that sufficient evidence

supports the district court's finding that Bergstrom acted unreasonably when he charged her, knocking her to the ground. In support of this argument, she points to the testimony that she suffered fear and injuries from Bergstrom's conduct. She points to the photos showing that she had bruising on her body following the April 4, 2021 confrontation with Bergstrom. For this same reason, she argues that Bergstrom's self-defense and immunity arguments are baseless. That is, she asserts that the district court correctly rejected Bergstrom's self-defense immunity arguments (1) because he was the initial aggressor during the April 4, 2021 confrontation and (2) because he otherwise used more force than necessary to defend himself.

In her response, though, Kline never addresses the adequacy of the record on appeal. A closer review of Kline's appellate brief shows that in making his arguments on her behalf, Kline's attorney never cited to the transcript of the bench trial. Kline's attorney's only citations in her appellate brief are to filings within the case's register of actions. Notwithstanding Kline's attorney's failure to discuss the limited information in the record on appeal, because of Bergstrom's unique strategic decisions, any analysis of Bergstrom's arguments on appeal must begin with this discussion.

In short, Bergstrom's decision to exclude vital portions of the transcripts from the evidentiary hearing on his immunity motion and from the parties' bench trial prevents us from reviewing most of his arguments on appeal. As outlined in the facts section of this opinion, Bergstrom filed three signed and certified requests for transcripts with the district court. The first two requests asked for complete transcripts. Only the last request asked for partially transcribed transcripts to be included in the record on appeal. Plainly, Bergstrom chose to file the third request excluding certain testimony, including his own testimony at both hearings, for some reason.

It is a well-known rule that an appellant has the burden to designate a record that is sufficient to establish the errors that the appellant asserts on appeal. If the appellant fails

13

to include an adequate record on appeal, the appellant's claim of error necessarily fails because this court lacks the documentation to adequately review the district court's alleged error. *City of Mission Hills v. Sexton*, 284 Kan. 414, 435, 160 P.3d 812 (2007).

An appellate court cannot reverse the district court's alleged error if the appellant fails to include significant portions of the district court's proceedings involving the alleged error in this court's record. If we ruled against the district court on such a record, then we would be deciding the appeal based on conjecture rather than the facts and arguments before the district court.

As a pro se litigant, perhaps Bergstrom did not understand that he carries the burden of proof to establish that the district court erred. Thus, perhaps he did not understand that he had the burden of proof to designate a record on appeal establishing that error. As noted by the district court in its memorandum decision, courts construe pro se pleadings liberally. Nevertheless, the liberal construction rule just means that the substance of a pro se litigant's pleading controls over what that litigant has labeled his or her pleading. It does not mean that pro se litigants get special treatment. *Joritz*, 61 Kan. App. 2d at 498-99. Instead, as emphasized in the introduction of this opinion, our Supreme Court and this court have repeatedly warned pro se litigants that they are required to follow the same rules of procedure and evidence that govern litigants who are represented by counsel. *Guillory*, 285 Kan. at 229; *Joritz*, 61 Kan. App. 2d at 498; *In re Estate of Broderick*, 34 Kan. App. 2d at 701; *Mangiaracina*, 11 Kan. App. 2d at 595-96.

In *Mangiaracina*, 11 Kan. App. 2d at 595-96, this court set out the obligation of a pro se litigant:

> "A pro se litigant in a civil case is required to follow the same rules of procedure and evidence which are binding upon a litigant who is represented by counsel. Our legal system cannot function on any basis other than equal treatment of all litigants. To have different rules for

different classes of litigants is untenable. A party in civil litigation cannot expect the trial judge or an attorney for the other party to advise him or her of the law or court rules, or to see that his or her case is properly presented to the court. A pro se litigant in a civil case cannot be given either an advantage or a disadvantage solely because of proceeding pro se."

This well-known passage provides the standard by which pro se litigants are to be measured under Kansas law.

Here, except for the second of Bergstrom's five labeled arguments on appeal, Bergstrom's arguments are based on pure questions of fact. Indeed, four of the five arguments he raises ask this court to reconsider the district court's fact-findings supporting its decision to find him civilly liable for assaulting and battering Kline while also rejecting his counterclaims. His first argument concerns whether the bench trial evidence proved that Kline suffered enough pain for the district court to find him civilly liable for assault and battery. His third argument concerns whether the district court wrongly ignored his testimony that Kline acted unreasonably and was the initial aggressor in the April 4, 2021 confrontation. His fourth argument is that he presented sufficient evidence to prove that Kline trespassed into his lot. And his fifth argument raises a few separate issues involving whether he acted reasonably during the April 4, 2021 confrontation and whether Kline acted reasonably during the April 4, 2021 confrontation.

As a result, for Bergstrom to establish that the district court wrongly weighed the evidence against him as he contends in his first, third, fourth, and fifth arguments on appeal, we would have to do so without first reviewing all the evidence presented at his bench trial, including his own testimony. This is a snare and a delusion. Indeed, Bergstrom's decision to exclude the evidence he presented at the parties' bench trial means that other than the parties' exhibits, Kline's and Jones' testimonies supporting Kline's assault and battery claim was the only evidence before the district court that we

15

have to review. Because this court's standard of review considers the evidence in the light most favorable to the appellee *and* because Bergstrom chose to include just Kline's testimony and Kline's witness' testimony in this court's record on appeal, it naturally follows that Bergstrom's decision to exclude his testimony and Bennett's testimony from this court's record on appeal would be fatal to his appeal. *Wolfe Electric, Inc.*, 293 Kan. at 407. Relatedly, because Bergstrom's first, third, fourth, and fifth arguments on appeal ask this court to find that the district court wrongly accepted Kline's evidence while rejecting or ignoring his evidence, Bergstrom's sufficiency of the evidence arguments also ask this court to reweigh the evidence in his favor in violation of this court's standard of review. 293 Kan. at 407.

Thus, to summarize, we reject Bergstrom's sufficiency of the evidence arguments for two reasons: (1) because he has not designated a sufficient record on appeal to allow this court to adequately consider the district court's alleged errors; and (2) because his sufficiency of the evidence arguments otherwise hinge on violating this court's standard of review.

Yet, because there are problems with the record on appeal that seem unrelated to Bergstrom's partial transcripts request, it is important for us to quickly address those problems. To begin with, in his appellate brief, Bergstrom contends that the exhibits admitted at the bench trial are missing. He suggests that the district court judge lost the exhibits after he issued his memorandum decision. To support this argument, he has attached a document to his brief indicating that the Dickinson County District Court recognizes that the district court judge was the last person who had the exhibits. Although it is undisputed that Kline recorded the April 4, 2021 confrontation with her cellphone, it seems that Kline's video is missing from the record on appeal for this reason.

Next, Bergstrom's record on appeal includes a motion from the Dickinson County District Court Clerk to compile Bergstrom's record on appeal out of time because the

October 2023 cybersecurity attack on the Kansas Judicial Branch had limited the court staff's ability to access the case management system to compile Bergstrom's record on appeal. So, the October 2023 cybersecurity attack undoubtedly caused some delay in the Dickinson County District Court Clerk's Office's ability to compile Bergstrom's record on appeal.

Lastly, although Bergstrom asked for a partial transcript of his evidentiary hearing to be included in his record on appeal, the partial transcript has not been included. It seems that Bergstrom attempted to remedy the exclusion of the evidentiary hearing transcript from the record on appeal by attaching it in the appendix of his appellate brief. Of course, including the evidentiary hearing transcript as an attachment to his brief does not remedy the transcript's exclusion from the record on appeal because an appendix is not part of the record on appeal. *City of Mission Hills*, 284 Kan. at 435.

Even so, the preceding problems with the record on appeal have no bearing on our decision because of Bergstrom's strategic decision to request transcripts excluding important portions of his motion hearing and the parties' bench trial from the record. When suggesting that the district court judge lost the exhibits at the parties' bench trial, Bergstrom never contends that the fact that the exhibits are missing prevents us from considering his arguments on appeal. To the contrary, while discussing this issue, he contends that his arguments are properly before this court although the exhibits are missing. Hence, if Bergstrom had any arguments about this court waiting to review his appeal until the district court found the trial exhibits, he has abandoned those arguments on appeal by not raising those arguments. See *Cooke v. Gillespie*, 285 Kan. 748, 758, 176 P.3d 144 (2008) (holding that an issue not briefed by a litigant has been waived or abandoned). Similarly, because Bergstrom contends that his arguments are properly before this court although the trial exhibits are missing, he has invited any error that this court may make by considering his arguments without the trial exhibits. See *State v. Fleming*, 308 Kan. 689, 696, 423 P.3d 506 (2018) (holding that a litigant "cannot ask a

court to take a specific action and then later ask for the judgment to be reversed because the court complied with the request").

Regarding the October 2023 cyberattack on the Kansas Judicial Branch, the Dickinson County District Court Clerk's filing never suggested that it could not complete Bergstrom's requested record on appeal. Rather, the Clerk explained that court staff needed more time to compile the record. More importantly, the Clerk moved to compile Bergstrom's record on appeal out of time because of the October 2023 cyberattack more than a month after Bergstrom requested that partial records of his evidentiary hearing on his immunity motion and the parties' bench trial be included in this record on appeal. Thus, the October 2023 cyberattack could not have affected Bergstrom's decision to include partial hearing transcripts in the record.

As for Bergstrom's request for the evidentiary hearing on his immunity motion transcript "excluding all testimony except JAMEA DANU' KLINE," nothing in the record on appeal explains why the transcript is missing. But this problem with Bergstrom's record on appeal is irrelevant because of Bergstrom's strategic decision to request a transcript that excluded testimony, including his own testimony. As explained already, by doing this, Bergstrom ensured that even if the partial transcript had been included in this court's record on appeal, this partial transcript would not satisfy Bergstrom's burden to designate a record on appeal proving the district court's alleged errors. Also, it would violate this court's standard of review. Thus, although it is problematic that Bergstrom's requested partial transcript on his immunity motion evidentiary hearing has not been included in the record on appeal, Bergstrom's strategic decision to request the inclusion of a partial transcript means this error is harmless.

Turning our attention to Bergstrom's remaining argument—his second labeled argument, in a single paragraph in his appellate brief, we note that Bergstrom contends that the district court erred because it relied on K.S.A. 21-5223 when it denied his

18

immunity motion. He asserts that because his and Kline's confrontation concerned the property line outside, the district court should have applied K.S.A. 21-5225 when it considered his immunity motion.

K.S.A. 21-5223(a) provides:

"A person is justified in the use of force against another when and to the extent that it appears to such person and such person *reasonably believes* that such use of force is necessary to prevent or terminate such other's unlawful entry into or attack upon such person's dwelling, place of work or occupied vehicle." (Emphasis added.)

K.S.A. 21-5225 states:

"A person who is lawfully in possession of property other than a dwelling, place of work or occupied vehicle is justified in the use of force against another for the purpose of preventing or terminating an unlawful interference with such property. Only such use of force as *a reasonable person* would deem necessary to prevent or terminate the interference may intentionally be used." (Emphasis added.)

So, K.S.A. 21-5223(a) gives immunity to a person who uses reasonable force to defend oneself from a person entering a dwelling, office place, or occupied car; that is, a structure. Meanwhile, K.S.A. 21-5225 gives immunity to a person who uses reasonable force to defend oneself from another's unlawful interference with property. Thus, because the April 4, 2021 confrontation occurred outside as Kline and Bergstrom argued about the location of their shared property line, Bergstrom correctly argues that the district court should have considered his immunity motion under K.S.A. 21-5225 rather than K.S.A. 21-5223(a).

All the same, Bergstrom's argument ignores that both immunity statutes require the person defending property to use reasonable force. Here, the district court expressly

19

found that Kline's video proved that a person of ordinary prudence and caution would believe that Bergstrom was the physical aggressor. Likewise, it found that *if* Kline slapped Bergstrom before Bergstrom shoved Kline, then Bergstrom's aggressive approach "may have justified her slap" in self-defense.

As a result, although the district court wrongly relied on K.S.A. 21-5223(a) when denying Bergstrom's immunity motion, Bergstrom's argument ignores the reason why the district court denied his motion—his unreasonable use of force and excessive force. Because both K.S.A. 21-5223(a) and K.S.A. 21-5225 provide people who use reasonable force in defense of property immunity, it necessarily follows that the district court's errant reliance on K.S.A. 21-5223(a) to deny Bergstrom's immunity motion was harmless. The district court's reason for denying Bergstrom's immunity motion was not grounded in the location where Bergstrom alleged that he acted in defense of property under K.S.A. 21-5223. It was grounded in the unreasonableness of Bergstrom's decision to turn a verbal argument about the location of a property line into a physical altercation.

So, to summarize, none of Bergstrom's arguments on appeal prove that the district court erred when it found him civilly liable for assaulting and battering Kline while also denying his six counterclaims. Bergstrom has not designated a record on appeal substantiating his many arguments about insufficient evidence supporting the district court's decision. Instead, his third request for transcripts proves that Bergstrom strategically chose to include partial transcripts of his immunity motion evidentiary hearing and the parties' bench trial in the record on appeal. But by doing this, we cannot evaluate the district court's allegedly errant decisions. Thus, we refuse to consider Bergstrom's first, third, fourth, and fifth arguments on appeal based on this misguided strategic decision. As for Bergstrom's second argument, although the district court mistakenly relied on K.S.A. 21-5223(a) rather than K.S.A. 21-5225 when denying the immunity motion, we determine that this error is harmless because the district court denied Bergstrom's motion because his use of force was unreasonable.

Affirmed.