NOT DESIGNATED FOR PUBLICATION

No. 128,054

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MIDFIRST BANK,
*Appellee*,

v.

GARY J. SIPPLE and ANNETTE E. JETER-SIPPLE,
*Appellants*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; TERESA L. WATSON, judge. Submitted without oral argument. Opinion filed February 20, 2026. Affirmed.

*Gary Sipple* and *Annette E. Jeter-Sipple*, appellants pro se.

*Richard M. Beheler*, of Southlaw, P.C., of Overland Park, for appellee.

Before ISHERWOOD, P.J., CLINE and COBLE, JJ.

PER CURIAM: Gary J. Sipple and Annette E. Jeter-Sipple, proceeding without counsel, appeal the Shawnee County District Court's denial of their motion to vacate a judgment of foreclosure on their property. Though the Sipples allege several errors, their appeal hinges on the propriety of the district court's order denying the motion to vacate, which was based entirely on the timeliness of the motion. On our review, we note that the district court abused its discretion, in part, by failing to recognize that some issues the Sipples raised had no time limitation. Even so, we affirm the district court as right for the wrong reason because the Sipples failed to present a colorable claim that the judgment of foreclosure was void.

1

FACTUAL AND PROCEDURAL BACKGROUND

In March 2009, Annette obtained property with a legal description of Lot 10, Block A, West Indian Hills Subdivision, No. 2, in Shawnee County with a handwritten addition of "07 Section, Township 12, Range 15" ("the West Indian Hills property"). At about the same time, Annette obtained a personal loan from Home Savings of America in the amount of $142,226. The loan was secured by a mortgage signed by both Annette and Gary. The mortgage was duly recorded on March 11, 2009.

A few years later, Home Savings assigned the mortgage to JP Morgan Chase Bank. Months after the assignment, the Sipples signed a loan modification agreement with JP Morgan Chase Bank that extended additional credit and refinanced the loan. This agreement was also secured by the mortgage and duly recorded.

Five years after the loan modification agreement, both Annette and Gary created trusts. Annette purportedly transferred her interest in the West Indian Hills property to her trust by quitclaim deed. Before this deed was signed, JP Morgan Chase Bank assigned the mortgage on the West Indian Hills property to MidFirst Bank. The assignment was duly recorded. At some point, the promissory note also was ostensibly transferred from JP Morgan Chase Bank to MidFirst Bank.

On March 28, 2022, MidFirst Bank filed a petition to foreclose on the mortgage. The petition alleged that the Sipples had failed to make payments on the loan since December 1, 2019, which now had an outstanding balance of $119,336.44. Because less than one-third of the original indebtedness had been repaid, MidFirst Bank sought a redemption period of three months from the date of the sheriff's sale under K.S.A. 60-2414(m).

Instead of filing an answer to the petition, the Sipples filed a pro se notice of removal to federal district court. Because the notice was not filed with the federal district court, the notice was not effective to remove the case to federal court. Moreover, once the Sipples eventually filed a proper notice of removal in the federal district court, the federal court determined that removal was improper and refused the removal.

The Sipples also filed a mechanics' lien against their own West Indian Hills property, claiming a lien of $1,004,100 in property improvements. The lien was filed with the district court long after the mortgage was created, recorded, and assigned. The lien was purportedly created on June 19, 2022. There is no indication in the record that the lien was ever recorded.

On September 12, 2022—approximately six months after filing its petition—MidFirst Bank sought summary judgment on its mortgage foreclosure. Again, the Sipples did not file a responsive pleading to the motion for summary judgment but filed a motion to compel arbitration and sought to disqualify the judges presiding over the case. The Sipples also filed a document challenging "territorial jurisdiction" and personal jurisdiction, citing federal and Florida authority.

On January 12, 2023, the district court granted summary judgment in favor of MidFirst Bank in a journal entry of judgment of foreclosure. The Sipples continued to file a flurry of pro se motions that the district court summarily denied. The Sipples filed a motion to dismiss, which the district court also denied. The Sipples did not appeal any of these orders.

On June 12, 2023, MidFirst Bank requested a court order of sale on the West Indian Hills property to be directed to the sheriff of Shawnee County. The district court issued the order the next day. A week later, the Sipples filed a motion to dismiss the order

3

of sale as a void judgment. The court denied this motion. The Sipples again did not appeal either of these orders.

On July 26, 2023, MidFirst Bank filed a motion seeking a court order confirming the sheriff's sale of the West Indian Hills property. The court issued the order the following day. Again, the Sipples filed no appeal.

When the Sipples refused to vacate the property, the new owner brought an eviction action. The district court ruled that the new owner was the legal and rightful owner of the property and granted the petition for eviction. The Sipples appealed this determination, and our court affirmed the district court. *MRB, LLC v. Sipple*, No. 127,315, 2025 WL 737061 (Kan. App. 2025) (unpublished opinion).

Meanwhile, nearly a year after the court filed its order confirming the sheriff's sale, the Sipples filed a motion to vacate the foreclosure judgment on May 31, 2024. The court denied the motion approximately a month later, deeming the motion untimely.

The Sipples filed a timely notice of appeal from the district court's order denying their motion to vacate the judgment.

ANALYSIS

*Jurisdiction and Scope of Appellate Review*

As a preliminary matter, we must first address the scope of our review in this appeal. The right to appeal is entirely statutory; it is not guaranteed by the federal or state Constitutions. Accordingly, an appellate court only obtains jurisdiction over an appeal when the appeal conforms to the appropriate time limitations and statutory procedures. *State v. Clark*, 313 Kan. 556, 561, 486 P.3d 591 (2021).

4

K.S.A. 60-2101(a) governs when an appellate court may exercise jurisdiction. While there are various judgments or orders that a party may appeal, a party generally must obtain a final decision before an appellate court will exercise jurisdiction. See K.S.A. 60-2102(a)(4); *State v. McGaugh*, 56 Kan. App. 2d 286, 290, 427 P.3d 978 (2018). The procedure for filing an appeal is directed by K.S.A. 60-2103, and the time for filing a notice of appeal with the district court is 30 days from the date of the filing of the journal entry of judgment. K.S.A. 60-2103(a). Under statutory counting rules, additional days may be afforded a party on a showing of excusable neglect—and then only for an additional 30 days—under K.S.A. 60-2103(a), or, when the written judgment is mailed to the party who wishes to appeal, the court must add an additional three days to the limitation period. K.S.A. 60-206(d). Compliance with the time limitations for filing an appeal is jurisdictional, meaning we lack the power to consider an untimely appeal. *Guillory v. State*, 285 Kan. 223, 224, 170 P.3d 403 (2007).

The appellate record before us contains one notice of appeal, filed in the district court by the Sipples on July 8, 2024. This date is well beyond 30 days from the district court's journal entry of judgment on the foreclosure—filed on January 12, 2023—and the order confirming the sheriff's sale—filed on July 27, 2023. Accordingly, we have no jurisdiction to consider any direct challenges to either of these judgments. *Guillory*, 285 Kan. at 224 ("Failure to file a timely notice of appeal requires dismissal of the untimely appeal.").

The Sipples' notice of appeal is timely with respect to the district court's order denying their motion to vacate the foreclosure judgment, which was filed on June 27, 2024. But as reasoned above, our appellate review is necessarily limited solely to the district court's decision on the motion to vacate.

*Identifying the Issues Before the Court*

As a preliminary matter, MidFirst Bank argues that the Sipples' brief fails to raise the claims raised in the motion to vacate and raises new challenges to the underlying judgment.

In their motion to vacate, the Sipples raised six claims that they argued entitle them to vacate the judgment of foreclosure: (1) lack of original instrument; (2) entitlement to enforce the instrument; (3) securitization of the instrument; (4) violation of constitutional rights (due process); (5) equitable rights; and (6) incorrect judgment.

As pro se litigants, the Sipples are entitled to liberal construction of their pleadings. But liberal construction means only that an appellate court gives effect to the substance of the claims rather than the form. K.S.A. 60-208(e) ("Pleadings must be construed so as to do justice."); *Oller v. Kincheloe's, Inc.*, 235 Kan. 440, 446, 681 P.2d 630 (1984) ("[A] host of Kansas decisions have interpreted the provisions of K.S.A. 60-208 to provide for a liberal construction of the pleadings with the emphasis on substance rather than form.").

Even though an appellate court is obligated to construe a pro se pleading liberally to give effect to the substance rather than form, this liberal construction does not relieve a pro se litigant from complying with the applicable procedural rules. *In re Estate of Broderick*, 34 Kan. App. 2d 695, 701, 125 P.3d 564 (2005).

> "'A pro se litigant in a civil case is required to follow the same rules of procedure and evidence which are binding upon a litigant who is represented by counsel. Our legal system cannot function on any basis other than equal treatment of all litigants. To have different rules for different classes of litigants is untenable. A party in civil litigation cannot expect the trial judge or an attorney for the other party to advise him or her of the law or court rules, or to see that his or her case is properly presented to the court. A pro se

6

litigant in a civil case cannot be given either an advantage or a disadvantage solely because of proceeding pro se.'" *In re Estate of Broderick*, 34 Kan. App. 2d at 701 (quoting *Magiaracina v. Gutierrez*, 11 Kan. App. 2d 594, 595-96, 730 P.2d 1109 [1986]).

Kansas Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36) requires an appellant to include in an appellate brief that "[t]he arguments and authorities relied on, separated by issue if there is more than one. Each issue must begin with citation to the appropriate standard of appellate review and a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on." This rule creates competing obligations for a party seeking appellate review. The party must preserve an appellate issue in the district court by properly raising the issue for consideration by the district court. The party must also prosecute the issue on appeal by presenting argument in support of a claim in an appellate brief. A party's failure to comply with the preservation requirement risks having the appellate court refuse to address the issue. See *State v. Mendez*, 319 Kan. 718, 730, 559 P.3d 792 (2024) (noting preservation requirement and directing that an appellate court is not required to consider an issue raised for the first time on appeal, even if an exception applies). A failure to comply with the latter part of the rule may result in the appellate court finding the claim raised in the district court waived or abandoned on appeal. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018) (issues not adequately briefed deemed abandoned).

On appeal, the Sipples now raise seven issues: (1) delegation of authority; (2) lack of jurisdiction; (3) legal fictions and standing; (4) lack of original instrument; (5) violation of our due process rights; (6) breach of trust and fiduciary duties; and (7) lack of debt.

Giving effect to the substance of the Sipples' claims rather than the manner in which they are articulated, their arguments regarding MidFirst Bank's inability to produce an original instrument and MidFirst Bank's improper delegation of authority rest on the

7

legal premise that MidFirst Bank does not hold the promissory note but sought foreclosure as an interested party only to the mortgage and therefore lacks standing to bring the foreclosure. This argument was made in different ways in the motion to vacate the judgment of foreclosure and in the Sipples' appellate brief. Similarly, the argument that the Sipples' due process rights have been violated was "raised" in the motion to vacate and in their appellate brief. The other arguments were either not raised in the motion to vacate or have not been pursued on appeal.

A party may raise an unpreserved issue on appeal, if the party persuades the court that one of three exceptions to preservation applies. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). An appellate court's consideration of an unpreserved issue remains discretionary, even if a litigant argues one of the exceptions applies. *Mendez*, 319 Kan. at 730. But, if the litigant fails to make an argument for the application of a preservation exception, the appellate court generally deems the argument waived or abandoned. See *State v. Farmer*, 312 Kan. 761, 766, 480 P.3d 155 (2021).

On the flip side, the Sipples' brief does not appear to pursue arguments related to securitization of the loan documents, the loss of equitable rights, or the defects in the district court's foreclosure ruling, except as these arguments overlap with other preserved arguments. Consequently, these issues are waived or abandoned. *Marriage of Williams*, 307 Kan. at 977.

As a result, the issues properly preserved for appellate review and raised in this appeal include the Sipples' challenge to MidFirst Bank's standing to bring the foreclosure action because MidFirst Bank does not hold the original promissory note and their argument that the district court violated their due process rights. The motion to vacate does not challenge the district court's subject matter jurisdiction or personal jurisdiction over the Sipples, but this issue may be considered by an appellate court for the first time on appeal or even on the court's own initiative. *Baker v. Hayden*, 313 Kan. 667, 673, 490

8

P.3d 1164 (2021) (appellate court must consider jurisdiction, even if raised for the first time on appeal or under the court's own initiative). If a district court lacked jurisdiction to enter judgment, an appellate court lacks jurisdiction to review the merits and may only rule on the jurisdictional question. See *Nicholson v. Mercer*, 319 Kan. 712, 714, 559 P.3d 350 (2024) ("If the district court lacked jurisdiction to enter an order, an appellate court does not acquire jurisdiction over the subject matter on appeal.").

In sum, the three issues properly before us in this appeal concern the Sipples' challenges to jurisdiction, standing, and due process. These challenges must be addressed within the context of reviewing the district court's denial of the motion to vacate the judgment of foreclosure.

*K.S.A. 60-260—Motion to Set Aside Judgment*

The Kansas Rules of Civil Procedure do not provide a mechanism for filing a motion to "vacate" a judgment but provide for a motion to "set aside" a judgment under K.S.A. 60-260. Functionally, the terms are synonymous, with Black's Law Dictionary defining "set aside" as "to annul or vacate." Black's Law Dictionary 1652 (12th ed. 2024). K.S.A. 60-260(b) authorizes a district court to set aside a previous judgment for one of six enumerated reasons, with the last being a catch-all provision.

> "(b) *Grounds for relief from a final judgment, order or proceeding.* On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons:
> (1) Mistake, inadvertence, surprise or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under subsection (b) of K.S.A. 60-259, and amendments thereto;
> (3) fraud, whether previously called intrinsic or extrinsic, misrepresentation or misconduct by an opposing party;
> (4) the judgment is void;

9

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief." K.S.A. 60-260(b).

But the Kansas Legislature has also imposed time limitations on seeking relief from judgments under K.S.A. 60-260. The reason for these limitations is to provide for the finality of judgments. See *State v. Dunn*, No. 120,024, 2019 WL 2710173, at \*2 (Kan. App. 2019) (unpublished opinion) (noting generally that time limitations on collateral actions reflect legislative intent to preserve the finality of judgments). This legislative intent is emphasized by K.S.A. 60-260(c)(2), which denotes that the mere filing of a motion to set aside a judgment has no effect on the continued validity of the judgment. A party must continue to abide by the judgment unless and until the judgment is set aside by court order.

"(c) *Timing and effect of the motion*. (1) *Timing*. A motion under subsection (b) must be made within a reasonable time, and for reasons under paragraphs (b)(1), (2) and (3) no more than one year after the entry of the judgment or order, or the date of the proceeding.

(2) *Effect on finality*. The motion does not affect the judgment's finality or suspend its operation." K.S.A. 60-260(c).

An appellate court reviews a district court's decision on a motion to set aside judgment for an abuse of discretion. *In re Marriage of Johnston*, 54 Kan. App. 2d 516, 521, 402 P.3d 570 (2017). Judicial discretion is abused when a decision is outside the applicable legal framework, contrary to the applicable facts, or otherwise arbitrary, fanciful, or unreasonable. *In re Marriage of Kenkel*, 66 Kan. App. 2d 146, 151-52, 577 P.3d 612 (2025). Stated differently, a court abuses its discretion when its decision is contrary to a decision that any other reasonable person in the same position would make. *In re A.S.*, 319 Kan. 396, 400, 555 P.3d 732 (2024).

Here, the district court noted that the Sipples' motion to vacate did not identify the judgment that they sought to set aside (or vacate) and did not identify the subsection of K.S.A. 60-260(b) they believed warranted the relief requested. Even so, the district court analyzed the timeliness of the motion to vacate as though it had been brought under each of the subsections in K.S.A. 60-260(b), concluding that the motion was untimely under any of the subsections.

As illustrated in the discussion of the timing of the notice of appeal, the Sipples' motion to vacate the judgment—whether challenging the judgment of foreclosure or the order confirming the sale—is beyond a year from the journal entry of judgment on foreclosure and from the order confirming the sheriff's sale. The one-year limitation for claims under K.S.A. 60-260(b)(1), (b)(2), or (b)(3) may not be extended. K.S.A. 2024 Supp. 60-206(b)(2) ("A court must not extend the time to act under K.S.A. . . . 60-260(b) and amendments thereto."). Accordingly, to the extent the Sipples rely on subsections (b)(1), (b)(2), or (b)(3), their motion was untimely, and the district court properly dismissed any arguments to set aside the judgments under these subsections.

According to K.S.A. 60-260(c), however, the time limitation on claims brought under K.S.A. 60-260(b)(4), (b)(5), and (b)(6) is not so strict. Motions to set aside judgment brought under these subsections must be "made within a reasonable time." K.S.A. 60-260(c)(1). The district court ruled that the motion was not brought within a reasonable time without further analysis or even identifying the potential claims the Sipples raised. "The reasonable time frame is measured by determining when the movant came into possession of facts justifying the relief as compared to the time when he filed the motion seeking the relief." *Wilson v. Wilson*, 16 Kan. App. 2d 651, 659, 827 P.2d 788 (1992).

For purposes of this appeal, though, we need not determine whether the district court properly held that the Sipples brought their motion to vacate within a reasonable

11

enough time after the judgment of foreclosure. First, our Kansas caselaw establishes that a "reasonable time" for challenging a void judgment is any time. See *Colorado Interstate Gas Co. v. Beshears*, 271 Kan. 596, 611, 24 P.3d 113 (2001) ("A void judgment is a nullity and may be vacated at any time.") (citing *Bazine State Bank v. Pawnee Prod. Serv., Inc.,* 245 Kan. 490, 495-96, 781 P.2d 1077 [1989]). We recognize that the United States Supreme Court recently found that Federal Rule of Civil Procedure 60(c)(1)'s "reasonable time" limit also applies to motions alleging voidness. *Coney Island Autoparts Unlimited, Inc., v. Jeanne Burton, Trustee*, 607 U.S. __, 2026 WL 135998, at *3 (January 20, 2026). But we are duty bound to follow Kansas Supreme Court precedent and will do so, particularly given that we interpret Kansas rules of civil procedure here, not federal rules as addressed in *Coney Island*. See *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022) (The Kansas Court of Appeals is duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position.). And, because we consider the Sipples' arguments on their merits, we need not delve into whether their voidness argument was presented in a "reasonable time" or whether it could be considered at "any time."

As previously indicated, the only remaining issues before the court involve the jurisdiction of the court to enter the foreclosure judgment, MidFirst Bank's standing to bring a foreclosure action, and a potential violation of the Sipples' due process rights. All three of these issues could potentially render the judgment of foreclosure void. A judgment is void, and a nullity, if a court lacked jurisdiction to render it or acted inconsistent with due process. *In re Adoption of A.A.T.*, 287 Kan. 590, 598, 196 P.3d 1180 (2008). In Kansas, standing is a component of the district court's subject matter jurisdiction. See *FV-I, Inc. v. Kallevig*, 306 Kan. 204, 211, 392 P.3d 1248 (2017). As a result, the district court abused its discretion in holding that these claims were not brought within a reasonable time. Although the court could dismiss the claims if it determined they lacked merit, the record provides no indication that the district court considered any of these claims for substantive merit. The court dismissed these claims—

12

claims that may be raised at any time under existing Kansas Supreme Court precedent—as untimely. This constitutes an abuse of judicial discretion.

Even so, we need not reverse the district court's decision. This is because when an allegation is made that a judgment is void, the question becomes a matter of law, over which an appellate court possesses unlimited review. See *Adoption of A.A.T.*, 287 Kan. at 598-99. Accordingly, we will consider the merits of the Sipples' three remaining arguments to determine whether the district court was correct, even if for the wrong reasons. *Nicholson*, 319 Kan. at 717 (affirming the Court of Appeals as right for the wrong reason).

### 1.     *Jurisdiction*

A judgment on a mortgage foreclosure is a judgment in rem—operating directly on the property itself, not a personal judgment. *State Bank of Downs v. Criswell*, 155 Kan. 314, Syl., 124 P.2d 500 (1942). A district court in Kansas possesses subject matter jurisdiction over in rem actions against property in Kansas. K.S.A. 20-301 ("There shall be in each county a district court, which shall be a court of record, and shall have general original jurisdiction of all matters, both civil and criminal, unless otherwise provided by law . . . ."); *Wells Fargo Bank, N.A. v. Aleteanu*, No. 108,926, 2013 WL 6062714, at *3 (Kan. App. 2013) (unpublished opinion) ("This includes subject matter jurisdiction over real estate foreclosure actions.").

In their brief, the Sipples cite a case related to personal jurisdiction. But their argument regarding personal jurisdiction is not developed and, as a result, is deemed abandoned. *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017) (a point incidentally raised in a brief but not argued is deemed waived or abandoned). But, even if we were inclined to address the question of personal jurisdiction, personal jurisdiction, unlike subject matter jurisdiction, may be waived. K.S.A. 60-212(b)(2), (h) (noting that a

13

party waives an objection to personal jurisdiction by failing to raise the defense in a responsive pleading or motion filed before a responsive pleading is due).

It is true that the Sipples never filed a responsive pleading in this case. But they entered an appearance with the district court by invoking the power of the court in various ways. *Sharp v. Sharp*, 196 Kan. 38, 40, 409 P.2d 1019 (1966) ("Broadly speaking, an appearance may be defined as an overt act by which a party comes into court and submits himself to its jurisdiction and is his first act therein."). While the Sipples' ineffective attempt to remove the case to federal court may not constitute a voluntary appearance because it did not ask the state district court to exercise its authority, the Sipples' motion to compel arbitration and subsequent filings did invoke the authority of the court to act on their behalf. The Sipples did not claim a lack of personal jurisdiction in their initial voluntary appearance, though they raised it more than six months after MidFirst Bank filed its petition and about a month after MidFirst Bank's motion for summary judgment.

Under the circumstances of this case, the Sipples waived any objection to personal jurisdiction that they might have had.

2.      *Standing*

Many of the standing claims raised in the motion to vacate relate to the allegation that MidFirst Bank did not present the original promissory note. In Kansas, the holder of the note is also the holder of the mortgage securing it. *U.S. Bank NA v. McConnell*, 48 Kan. App. 2d 892, 900, 305 P.3d 1 (2013). The mortgage follows the right to collect a debt, not the other way round. *FV-I, Inc.*, 306 Kan. at 224-25. A note holder of a promissory note has standing to enforce the terms of indebtedness, including the right to foreclose on a mortgage that secures it. *Metlife Home Loans v. Hansen*, 48 Kan. App. 2d 213, 225, 286 P.3d 1150 (2012). A mortgage is not enforceable when it is held by a

14

different entity than the one holding the promissory note. *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 540-41, 216 P.3d 158 (2009).

Accordingly, to have standing to enforce the foreclosure, MidFirst Bank must be entitled to enforce the promissory note as a negotiable instrument under K.S.A. 84-3-301. *FV-I, Inc.*, 306 Kan. at 228 ("FV-I's possession of the mortgage alone without demonstrating enforcement rights in the note is insufficient to establish standing in a mortgage foreclosure proceeding."). MidFirst Bank has the ability to enforce the promissory note if it is a holder of the note; a nonholder in possession of the note who has the rights of a holder; or a person not in possession of the note who can enforce because the note was lost, stolen, destroyed, or paid and revoked or recovered. K.S.A. 84-3-301; K.S.A. 84-3-309; K.S.A. 84-3-418(d).

When Annette originally signed her promissory note, she secured it with a mortgage signed by herself and Gary. The original mortgage provided that the security instrument was given to Mortgage Electronic Registration System, Inc. (MERS), as nominee for the lender, Home Savings of America. In assigning the mortgage to JP Morgan Chase Bank, the contract provided that MERS, as the nominee for Home Savings of America, conveyed, granted, assigned, transferred, and set over "the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon" to JP Morgan Chase Bank. JP Morgan Chase Bank then subsequently assigned its interest in the mortgage, along with "all of its interest in and to the Mortgage, and corresponding obligations" to MidFirst Bank.

But the record also contains a document purporting to transfer Annette's personal debt without recourse first to JP Morgan Chase Bank, N.A., and then to MidFirst Bank. The document does not have any dates regarding these transfers. Because the document appears to be an attachment to the petition for foreclosure, however, the transfers must have occurred before MidFirst Bank attempted to foreclose on the mortgage. The transfer

15

to JP Morgan Chase Bank is somewhat irrelevant because the Sipples refinanced the debt directly with JP Morgan Chase Bank. Even if the mortgage had been transferred separately from the promissory note to MidFirst Bank, the transfer of the interest in the promissory note before MidFirst Bank sought to foreclose on the property reunited the interests. See *Deutsch Bank Nat. Trust Co. v. Son*, No. 108,872, 2013 WL 5188240, at *4 (Kan. App. 2013) (unpublished opinion) ("If, for the sake of argument, we consider the note and mortgage to have been split between the originating lender and MERS, any such split was cured when, before this foreclosure action was commenced, MERS assigned the mortgage to Deutsche Bank and Wilmington Finance assigned the note to Deutsche Bank.").

Besides, in its petition, MidFirst Bank alleged that it was entitled to enforce the promissory note because it had possession of the note directly or through its agent. Because the Sipples did not file an answer, this factual allegation was unchallenged. In its motion for summary judgment, MidFirst Bank alleged in its statement of uncontroverted facts that it was the holder of the note at the time the mortgage foreclosure was filed and entitled to enforce the note. Again, the Sipples did not respond to the motion for summary judgment to contradict MidFirst Bank's allegations of fact.

When a party opposing summary judgment fails to controvert the statement of facts offered by the party proposing summary judgment, the uncontroverted facts are deemed admitted. A party opposing a motion for summary judgment must do more than controvert the motion's facts; the nonmoving party has an affirmative duty to come forward with facts to support its claim. *State ex rel. Stephan v. Commemorative Services Corp.*, 16 Kan. App. 2d 389, 401, 823 P.2d 831 (1991). The Sipples did not controvert MidFirst Bank's allegation that it possessed the note, nor did they provide contrary evidence, such as an affidavit alleging the identity of the true holder of the note. Accordingly, the record contains no facts, other than the Sipples' protestations, to suggest

that MidFirst Bank did not possess the promissory note at the time it filed the mortgage foreclosure petition.

Based on the unrefuted allegations that the Sipples defaulted on the terms of the promissory note, MidFirst Bank had standing to initiate the mortgage foreclosure proceedings. See *FV-I, Inc.*, 306 Kan. at 214 ("[A] 'holder of a promissory note has standing to enforce the terms of indebtedness, including the right to foreclose on a mortgage that secures it.'"). The judgment of foreclosure was not void for lack of standing.

3.      *Due Process*

Although the Sipples allege a due process violation, they fail to fully brief the issue. They provide one paragraph claiming that the foreclosure proceedings constituted an illegal taking of property without due process of law. They also allege that the district court failed to hold any hearings to permit the Sipples to contest the foreclosure proceedings.

When analyzing due process claims, an appellate court first determines whether the State has deprived the claimant of a liberty or property interest. *Hogue v. Bruce*, 279 Kan. 848, 850-51, 113 P.3d 234 (2005). Presumably, the government's involvement in conducting a foreclosure and sheriff's sale constitutes a deprivation of one's property interests by the government. See *Walker v. City of Hutchinson*, 352 U.S. 112, 115, 77 S. Ct. 200, 1 L. Ed. 2d 178 (1956) (owner of property taken for public use entitled to due process); *Valentine v. Portland Timber & Land Holding Co.*, 15 Wash. App. 124, 128, 547 P.2d 912 (1976) ("Clearly, due process requires a 'day in court' before property interests can be extinguished.").

In most contexts, due process requires notice and a meaningful opportunity to be heard before the deprivation of a liberty or property interest. *Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970); *In re Adoption of A.A.T.*, 287 Kan. at 600. The Sipples do not argue that they failed to receive reasonable notice designed to apprise them of the proceedings. They argue only that they were not provided a hearing.

Notably, due process only affords litigants the *opportunity* to be heard. It does not protect them from their own failure to respond to court proceedings. *Bazine State Bank v. Pawnee Production Service, Inc.*, 245 Kan. 490, 494, 781 P.2d 1077 (1989) ("Default judgments entered for failure to answer within the time allowed, after proper service, do not violate due process. While procedural due process requires a hearing before there is a permanent deprivation of property, an unresponsive defendant may forfeit this constitutional right.").

The Sipples were given an opportunity to respond to the allegations within the petition. They opted not to file an answer. The Sipples were provided an opportunity to respond to the motion for summary judgment. They opted not to respond to the motion. The Sipples have not demonstrated a colorable deprivation of their constitutional right to due process in the foreclosure proceedings. Consequently, the allegation that MidFirst Bank violated their due process rights is insufficient to void the judgment of foreclosure or any of the subsequent orders regarding the disposition of the West Indian Hills property.

*Conclusion*

The Sipples have not disputed the district court's conclusion that any challenge they made to the judgment of foreclosure was not brought within a reasonable time. To the extent their challenges do not oppose the judgment as void, then, the Sipples fail to present a basis for finding that the district court abused its discretion in denying their

18

motion to vacate. While the district court abused its discretion in failing to recognize that some issues raised by the Sipples had no time limitation, we affirm the district court's decision as right for the wrong reason because the Sipples failed to present a colorable claim that the judgment of foreclosure was void.

Affirmed.